IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

STEPHEN WHITE, individually
and on behalf of all others similarly situated,

      Plaintiff,

v.

ISSUU, INC, a Delaware corporation;

      Defendants.

_____
__/

CASE NO.:

<u>CLASS ACTION</u>

## **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) AND DEMAND FOR JURY TRIAL**

Plaintiff, STEPHEN WHITE, on behalf of himself and all others similarly situated, alleges the following:

### **INTRODUCTION**

1. Plaintiff Stephen White (hereinafter "Mr. White" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of ISSUU, INC. ("Issuu" or "Defendant") in contacting Plaintiff's cellular

telephone in direct contravention and violation of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 et seq. (hereinafter "TCPA"), thereby invading

Plaintiff's privacy.

2.  The TCPA prohibits, among other practices, unsolicited text messages (or

"SMS" messages) to cellular telephones without prior express consent within

the meaning of the TCPA. Plaintiff alleges as follows upon personal knowledge

as to himself and his own acts and experiences, and, as to all other matters,

upon information and belief, including investigation conducted by his

attorneys.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction under 28 U.S.C. § 1331. This case involves a

question of Federal law, namely 47 U.S.C. § 227, et seq (TCPA). Damages and

injunctive relief are available under 47 U.S.C. § 227(b)(3). Venue is proper in

this District because the Defendant engage in business in this district and a

substantial part of the events or omissions giving rise to this claim occurred

here.

## PARTIES

4.  Mr. White is a natural person who, at all times relevant herein, is and was a resident of and is domiciled in Alachua County, Florida. Mr. White is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

5.  Upon information and belief, Plaintiff alleges that Defendant is a Delaware corporation with its principal place of business at 131 Lytton Ave, Palo Alto, CA, 94301, and whose registered agent for service of process is Michelle Yang. Defendant Issuu is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

6.  Upon information and belief, Plaintiff alleges Defendant is a company that created and marketed a website designed to, among other things, facilitate the distribution and sharing of digitally bound media and publications, and all times relevant herein Defendant conducted business in the State of Florida and in the County of Alachua, including the conduct that gives rise to this complaint.

## THE TELEPHONE CONSUMER PROTECTION ACT

7.  Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), in response to a growing number of consumer complaints regarding certain telemarketing practices.

8.  Consistent with its purpose, the TCPA regulates, among other things, the use of prerecorded messages and use of text or "SMS" messaging. The TCPA was

designed to prevent calls like the ones described within this complaint and to protect of the privacy of citizens. "Voluminous consumer complaints about abuses of telephone technology…prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

9. By enacting the TCPA, Congress made particular and specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102-243. § 7

10. To effectuate such findings, Congress found that, except in "emergency situations" or where the receiving party consents to such calls, "[b]anning…automated or prerecorded telephone calls…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 at* 4 (N.D. Ill. Aug. 10, 2012)(citing Congressional findings on TCPA's purpose); *Lardner v. Diversified Consultants Inc.*, 17 F.Supp.3d 1215 (S.D. Fla. 2014)(Same).

11. Specifically, Congress found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy,

regardless of the type of call…." *Id.* At §§ 12-13. *See also, Mims, 132 S. Ct. at 744*.

12. Relevant to the present case, the FCC issued a declaratory opinion in June 2015 confirming, among other things, that 1) internet-to-phone text messages require consumer consent; and 2) text messages are "calls" subject to the TCPA, reaffirming a previous declaratory opinion. <u>Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 30 F.C.C. Red 7961(2015).

13. Additionally, the FCC issued a declaratory order in 2003 that clarified that messages serving a "dual purpose," -- both informational and marketing -- are considered telemarketing messages for the purposes of the TCPA. <u>Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 18 FCC Rcd 14415 (2003).

14. Under § 227(b)(3), a person or entity may bring an action to recover actual monetary loss for a violation of the above prohibition and to receive $500 in statutory damages for each violation (which may be tripled in the event of a willful or knowing violation). <u>Id.</u> "The TCPA is essentially a strict liability statute" that "does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776

(11th Cir. 2011) (quoting *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir.2008)).

15. Because of the incredibly large amount of telemarketing calls, many of which violate the TCPA, and because of significant consumer frustration with the time-wasting and harassing nature of such calls, legislators and rulemakers have attempted implementation of numerous efforts to proscribe and prevent such calls.

16. One such effort was the Do-Not-Call Implementation Act of 2003, which, after passing and being signed into law, led to the creation of the National Do-Not-Call Registry. Inclusion on such registry is one way that consumers can assert their desire to avoid telemarketing calls. Enforcement began in October of 2003. Although the amount is constantly changing, estimates are that over 200,000,000 numbers have been registered with the Do-Not-Call Registry.

17. Incredibly, telemarketing calls -- including those for which there is no consent and are sent via an ATDS, and otherwise violate the TCPA -- have not only failed to dissipate, they are exponentially increasing.

18. "Since 2009, the FTC has seen a significant increase in the number of illegal sales calls..... Internet powered phone systems make it cheap and easy for

scammers to make illegal calls from anywhere in the world, and to display fake

caller ID information, which helps them hide from law enforcement."[1]

19. As recently summarized in the Washington Post, the current onslaught of

marketing spam harassment is unprecedented and the Do Not Call list is

uniformly ignored by telemarketers:

> "In theory, there is a fix: the National Do Not Call Registry, created in 2003. Today, 230 million numbers are on it. The point, obviously, is to not be called. And yet the FTC receives 19,000 complaints every day from list members who have, in fact, been called. There is a battle being waged over the inviolability of our telephone numbers — over the right to not be bothered."[2]

20. Spam marketing to telephones is growing exponentially, as noted again by the

Washington Post:

> Automated solicitation calls are "our modern scourge. In 2015, the call-blocking app YouMail estimated that close to a billion robo-calls were being placed *every month*. Two years later, that number has leapt to 2.5 billion. At best, these calls annoy. At worst, they defraud. *By far, they constitute the top consumer complaint received by the FTC*." -<u>Id.</u>

---

[1]https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (Last Checked March 27, 2018).

[2]https://www.washingtonpost.com/lifestyle/magazine/how-robo-call-moguls-outwitted-the-government-and-completely-wrecked-the-do-not-call-list/2018/01/09/52c769b6-df7a-11e7-bbd0-9dfb2e3
7492a_story.html?utm_term=.6ca7e12878e6. (Last checked February 28, 2018).

21. Plaintiff's number is registered on the Do-Not-Call National Registry. Thus, Plaintiff has evinced the clear desire that telemarketers forego spamming his phone number with unwanted and harassing calls and text messages.

22. Nevertheless, Defendant, much like the many other telemarketers referenced in the aforementioned articles, ignore the Do-Not-Call registry. It is partly for this very reason -- telemarketers so often and so consistently simply ignoring the good-faith and reasonable measures by which consumers can clearly communicate their desire to be left alone -- that the TCPA is necessary.

## **FACTUAL ALLEGATIONS**

23. Plaintiff fully incorporates by reference all previous paragraphs.

24. Defendant Issuu is a digital publishing company. Content-providers pay Defendant to publish their content on Defendant's digital platform, along with certain other features, including marketing and distribution.[3]

25. Consumers use Issuu's digital platform to consume a wide-range of content from the various providers who use Issuu to publish and market their content.

26. Thus, Defendant relies on widespread knowledge of their website in order to maximize the number of consumers who read the content specifically on their

---

[3] Notably, Defendant has published numerous articles concerning the TCPA, including compliance and best practices. Thus, it seems likely any violations of the TCPA were knowing or intentional.

website. The more consumers use Issuu to access the content published thereon -- or the more "clicks" Defendants website obtains -- the more Defendant can charge content-providers to use Defendant to publish their content.

27. In other words, content-providers are generally not restricted to certain platforms (such as Defendant's). Magazines and newspapers and digital newsletters and blogs and online publications use numerous methods of disseminating their content to consumers. Defendant provides merely one method or option among many for content-providers to reach consumers.

28. In such a competitive atmosphere, Defendant is incentivized to aggressively demonstrate their ability to provide "clicks" above and beyond other options. Further, Defendant is incentivized to distinguish their platform from others. One way in which they accomplish both goals is through marketing and advertising, including, in this case, doing so in a way violative of the TCPA.

29. Further, Defendant, on their website, markets their own publishing services, which range in price and volume. Thus, Defendant's website is marketed to at least two groups (which also, of course, might overlap): those who wish to consume the content provided through Defendant's publication services, and those who may purchase the publication services offered.

30. For those who wish to consume the content provided, Defendant also markets certain subscription or payment plans in order to access content on Defendant's site.

31. To effectuate the aforementioned purposes, Defendant aggressively spams cell phone numbers in order to draw people to their website, and market both the published content and Defendant's publishing services.

32. The text messages sent by Defendant are marketing texts in that they market Defendant's publish services, the content provided thereon, and other services.

33. Furthermore, Defendant's texts solicit consumers to engage in the services Defendant provides, including Defendant's publishing services and their content-provision services.

34. At no time did Plaintiff provide his cellular telephone number to the Defendant through any medium or give consent to receive calls or text messages from any of the named Defendants. The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided to the individual. See 2012 FCC Order, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer — providing permission in writing — to authorize autodialed or

prerecorded telemarketing calls...."). *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123-1124 (11th Cir. 2014).

35. Defendant sent Plaintiff a text message notwithstanding the fact that Plaintiff had never provided his cellular telephone number to the Defendant or given any consent to receive phone calls from the Defendant, including text messages.

36. On or about April 7, 2017, the Defendant sent an unsolicited text message to

Plaintiff's mobile phone number, as seen on the next page:





37. This text, described above, was unsolicited and unexpected by Plaintiff.

Plaintiff, prior to the receipt of the spam text message, had not provided his

cellular telephone number to the Defendant or given consent to receive any calls or text messages from the Defendant.

38. The link on the text message takes consumers to a website page where consumers are shown an example of the Defendant's publications alongside advertisements for the Defendant's products.

39. Upon information and belief, the phone number used to send the unsolicited text is from a Voice-over-IP number originating in Nevada. Voice-over-IP phone numbers are much easier and take significantly less time to set up than traditional analog numbers, are exponentially cheaper than traditional analog numbers, and can be immediately discarded after (one-time) use, and integrate easily into automated dialers. Thus, they are favored by companies who want a large amount of numbers for a singular purpose, such as sending out a mass amount of texts simultaneously through the use of an ATDS.

40. By sending unsolicited text messages without express consent and not pursuant to an ongoing emergency through the use of an automated dialer ("ATDS"), the Defendant violated the TCPA.

41. Through this conduct, the Defendant contacted Plaintiff on Plaintiff's cellular telephone, thereby invading his privacy, regarding an unsolicited service via an

"automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. §

227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

42. Plaintiff has suffered "an invasion of a legally protected interest" that is

"concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." He therefore has standing to bring this action. *Spokeo, Inc. v.*

*Robins*, 136 S. Ct. 1540, 1543, 578 U.S., 194 L. Ed. 2d 635 (2016). The kind of

alleged injury here is particularized and concrete— supported by common law

and legislative pronouncements. *See generally Mohamed v. Off Lease Only, Inc.*, No.

1:15-cv-23352-MGC (S.D. Fla. Mar. 22, 2017) (explaining requirements of

Article III standing).

43. Upon information and belief, this ATDS has the capacity to store or produce

telephone numbers to be called, using a random or sequential number

generator.

44. Specific information regarding the use of an ATDS will be obtained during

discovery, but an initial investigation evidences that an ATDS was used,

including, but not limited to:

    a. Use of VoIP phone numbers;
    b. Large amount of texts sent virtually instantaneously;
    c. Same or virtually identical and non-personalized language of the text
       message.

45. The unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant did not obtain the necessary consent required by the TCPA.

46. Alternatively, Defendant's spam text message served a dual purpose -- both marketing and informational -- which would also violate the TCPA.

47. The telephone numbers the Defendant called were assigned to a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

48. The telephone numbers the Defendant called were assigned to numbers for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1) and as that subsection has been interpreted by the FCC.

49. The unsolicited text message constitutes a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i), and for which Defendant did not receive consent, pursuant to 47 U.S.C. § 227(b)(1)(A).

50. The text message was sent by the Defendant, individually or jointly and/or by their agent, described above, and violated 47 U.S.C. § 227(b)(1).

51. Alternatively, the text message was sent on behalf of Defendant and pursuant to their direction and control.

52. The text message sent by the Defendant, described above, violated 47 U.S.C. § 227(b)(1).

53. The Eleventh Circuit has held numerous times that vicarious liability attaches where a sufficient agency relationship exists. *See CFTC v. Gibraltar Monetary Corp.,* 575 F.3d 1180 (11th Cir. 2009).

## CLASS ACTION ALLEGATIONS

54. Plaintiff fully incorporates by reference paragraphs 1-53.

55. Plaintiff brings this action on behalf of himself and all others similarly situated ("the Class").

56. Defendant sent unsolicited text messages without express, prior consent and not pursuant to an ongoing emergency through use of an ATDS, as a part of a general marketing scheme described herein.

57. Plaintiff represents and is a member of the Class, consisting of:

> "All persons within the United States who received one or more text messages from Defendant, directly or through use of an agent, pursuant to a scheme substantially similar or identical to the text messaging scheme described in the Complaint, between June 15, 2013, and the certification of this class."

58. Defendant and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class at this time, but, upon information and belief, as well as the investigation of his attorneys, believes the number to be in the thousands or tens of thousands, and perhaps more. Thus,

16

this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

59. Plaintiffs and the members of the Class were harmed by actions of the Defendant in at least, but not limited to, the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using an unsolicited spam text message(s), thereby invading the privacy of Plaintiff and the Class members. Plaintiff and the Class members were thereby damaged.

60. This suit, on behalf of the Class, seeks damages and injunctive relief for recovery of economic injury only. This suit is not intended to procure recovery for personal injury and/or related claims. Plaintiff reserves the right to modify or expand the Class definition to seek recovery on behalf of additional persons as warranted through further investigation and discovery.

61. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits to both parties and to this Court. The Class can be specifically identified through the Defendant's records, or through the records of the Defendant's agent(s) and/or subsidiaries.

62. The commonality in questions of law and fact and the intersecting community of interests protected by the TCPA therein have been repeatedly established.

The common questions of law and fact to the Class predominate over

questions which may affect individual Class members, including, but not

limited to, the following:

    a. Whether, within the four years prior to the filing of the Complaint,
       Defendant individually or by their agents sent any unsolicited text
       message(s) to the Class (other than, as previously mentioned, any
       message made for emergency purposes or with the prior express consent
       of the called party, or any other statutory exception) using any automatic
       dialing SMS or texting system to any telephone number assigned to a
       cellular phone service;

    b. Whether Plaintiff and the Class members were damaged thereby, and the
       extent of damages for such violation;

    c. Whether Defendant violated the TCPA through the subject texting
       scheme.

    d. Whether the Defendant and their agents and/or subsidiaries should be
       enjoined from engaging in such conduct in the future; and

    e. Whether Plaintiff and the Class are entitled to any other relief.

63. As someone who received at least one unsolicited spam text message from the

Defendant without prior express consent, Plaintiff is asserting claims that are

typical of the Class. Plaintiff will fairly and adequately represent and protect the

interests of the Class and has no interests antagonistic to any other member of

the Class.

64. Plaintiff and the members of the Class have all suffered irreparable harm

resulting from the Defendant's unlawful and wrongful conduct. Absent a class

action, the Class will continue to face the potential for further harm.

Additionally, these violations of law will be allowed to proceed without remedy and the Defendant will thus likely continue such and substantially similar illegal conduct, including pertaining specifically to Plaintiff and class. Because of the nature of individual claims, few Class members, if any, could afford to seek legal redress for the wrongs complained of herein.

65. Plaintiff has retained counsel experienced in handling class action claims, as well as claims involving violations of the TCPA.

66. A class action is the best method for the fair and efficient adjudication of this controversy. Classwide damages are essential to induce the Defendant to comply with federal and state law. The interest of Class members to individually control the prosecution of separate claims against the Defendant is small due to the minimal nature of the maximum statutory damages in separate or individual actions alleging invasion of privacy through violation of the TCPA.

67. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

68. Defendant has acted on grounds generally applicable to the Class, thus making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

### COUNT I: VIOLATIONS OF THE TCPA 47 U.S.C. § 227 ET SEQ.

69. Plaintiff fully incorporates by reference paragraphs 1-53 and 55-68.

70. The foregoing acts and omissions by Defendant and/or Defendant's agent(s), joint venturers, partners, and/or subsidiaries constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

71. As a result of Defendant's violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief prohibiting such conduct in the future.

### COUNT II: KNOWING AND/OR WILLFUL VIOLATIONS OF TCPA 47 U.S.C. § 227 ET SEQ.

73. Plaintiff fully incorporates by reference paragraphs 1-53, and 55-68.

74. The foregoing acts and omissions by Defendant and/or Defendant's agents) constitute numerous knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

75. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

76. Plaintiff and the Class are also entitled to and seek declaratory injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

### Count I: Violation of the TCPA, 47 U.S.C. § 227 Et Seq.

- As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court deems just and proper

### Count II: Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227 Et Seq.

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future
- Any other relief the Court deems just and proper.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff demands his right to a trial by jury.

**Dated:** June 18, 2018                                                    Respectfully submitted,

By:    ***/s/ Jake Phillips***
Jacob L. Phillips
FBN: 120130
NORMAND PLLC
62 W. Colonial Dr., Ste. 209
Orlando, FL 32801
Tel: 407.603.6031
jacob@ednormand.com
office@ednormand.com
service@ednormand.cm

*Attorney for Plaintiff and Putative Class*

22